591 A.2d 507

**ATLANTIC MUTUAL INSURANCE COMPANY, et al.**

v.

**Norman KENNEY, et al.**

**No. 170, Sept. Term, 1989.**

Court of Appeals of Maryland.

June 27, 1991.

Michael C. Rosendorf and Gilbert F. Shelsby, Jr. (Monte-
donico & Mason, Chartered, on brief), Baltimore, for peti-
tioner.

Paul J. Webber (Francis B. Buckley, Rollins, Smalkin,
Richards & Mackie, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE,\* COLE,
RODOWSKY, McAULIFFE, CHASANOW and
THEODORE G. BLOOM, Judge of the Court of Special
Appeals of Maryland (Specially Assigned), JJ.

McAULIFFE, Judge.

In this action the petitioners, Robert C. Hill and his
insurer, Atlantic Mutual Insurance Company, sued to recov-
er property damages resulting from a collision between
Hill's vehicle and a vehicle operated by Francis Holmes.
The action is not against Holmes; it is against Norman
Kenney and Roadway Express, Inc., the operator and owner
respectively of a 45–foot tractor trailer that petitioners
claim was negligently parked so as to significantly interfere
with the ability of the driver of each vehicle to observe the
approach of the other.

The case was originally tried in the District Court of
Maryland sitting in Anne Arundel County, where Judge
Thomas Curley found for the petitioners and awarded judg-
ment in the amount of $4,317.90. Respondents perfected an
appeal on the record to the Circuit Court for Anne Arundel
County, which reversed the judgment of the District Court
and entered a judgment for costs in favor of respondents.

---

\* Cole, J., now retired, participated in the hearing and conference of this
case while an active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section 3A, he also partici-
pated in the decision and adoption of this opinion.

We granted petitioners' petition for certiorari, and we now reverse the judgment of the circuit court and direct the reinstatement of the District Court judgment.

On 3 October 1986, Tracey Hill operated a motor vehicle owned by his father, Robert Hill, in the Linthicum area of Anne Arundel County. At noon on that day, he left the Westinghouse plant with a friend whom he was taking to the Baltimore–Washington International Airport. At the request of his friend, Hill stopped at a small shopping center on the way to the airport. The sole means of ingress to and egress from the shopping center consisted of two curb cuts on the east side of Route 170 (Camp Meade Road), the southernmost of which was marked for entrance into the shopping center, and the northernmost of which was marked for exit. Hill attempted to leave the shopping center by the only available exit, intending to turn left onto Route 170 and continue to the airport. As he approached the exit, Hill's vision to his left was obstructed, initially by vehicles parked in the parking lot in close proximity to Route 170, but ultimately, as he arrived at the intersection with Route 170, by a 45–foot tractor trailer parked on the east side of Route 170. The tractor trailer occupied all the space between the entrance and exit areas, an area designated as a "No Parking" zone by a posted sign.

Route 170 at this point is one lane in each direction, and the lanes are separated by a double yellow line. According to the police officer who investigated the accident, given the tractor trailer's parked position, an automobile northbound on Route 170 could "just about get through" between the double yellow line and the truck without going over the line.

Hill proceeded onto Route 170 in front of the parked tractor trailer. Just as the front of his vehicle reached the center line of Route 170, his vehicle collided with the Holmes vehicle, which was proceeding north on Route 170, passing the parked tractor trailer. Both drivers testified their view was obstructed by the truck. Hill said he did not see the Holmes vehicle until "about the point of impact." Holmes did not see the Hill vehicle until "it was like right in

front of me." The point of impact was at the center line of Route 170. Damage was to the front of the Holmes vehicle and to the left front portion of the Hill vehicle.

Norman Kenney was the driver of the tractor trailer. He routinely made deliveries to the shopping center, but ordinarily did so in a 28–foot truck that he drove into the center, and to a loading dock serving the stores. On this occasion, however, he was driving the 45–foot tractor trailer, and the only way to maneuver a truck of that size into the shopping center was to back it in. This, Kenney said, would have been "suicide" because "you'd have cars running underneath your trailer when you're backing the thing in the driveway. You'd be surprised the people can't see a 45–foot trailer, they'll run right into you." [1] Accordingly, Kenney decided to park the tractor trailer alongside the "No Parking" sign, and to deliver a pallet of goods by hand-truck. When asked how long it took him to deliver his cargo, Kenney said "well I had like a 140 pound skid—I put it on my hand-truck, and hand-trucked it back in the back—they (unclear words) and brought it back in about 15 minutes."

## I.

### Primary Negligence

Logically, the first question raised by this set of facts is whether the evidence was sufficient to support the District Court's finding that Kenney was negligent in where he parked the tractor trailer. Procedurally, however, the question may not be properly before us. Respondents did not argue the absence of primary negligence before the District Court. Rather, they appear to have assumed primary negligence could be found, and argued recovery was barred by contributory negligence, or because any negligence on the part of Kenney was not a proximate cause of the accident.

---

1. The investigating police officer, who also had experience as a truck driver, testified that the tractor trailer could have been backed into the shopping center "with a lot of effort."

On appeal to the circuit court, respondents argued for the first time, that the tractor trailer may not have been illegally "parked," because it was only temporarily stopped for the purpose of making a delivery, and the sign posted at that point did not prohibit "stopping" or "standing." *See* §§ 11–144 & 21–1003 of the Transportation Article, Maryland Code (1977, 1987 Repl.Vol.).

Although the rules of procedure governing appeals on the record from the District Court to a circuit court are not as comprehensive as those governing appeals to the Court of Special Appeals or to this Court, we have said that the ordinary rules governing the scope of appellate review in the latter courts are generally applicable to appeals on the record in a circuit court. *Ryan v. Thurston*, 276 Md. 390, 391–93, 347 A.2d 834 (1975). Maryland Rule 8–131(a), applicable to appellate procedure in the Court of Special Appeals and in this Court provides, in pertinent part, as follows:

Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

The rule "is simply enunciatory of the practice which has existed since 1825," *Gordon v. State National Bank*, 249 Md. 378, 383, 239 A.2d 915 (1968), and we see no reason not to apply it to appeals on the record from the District Court to a circuit court. The rule begins with the word "ordinarily" and we have recognized that an appellate court has discretion, under some circumstances, to consider and decide questions not tried and decided in the trial court. *Crown Oil v. Glen*, 320 Md. 546, 561, 578 A.2d 1184 (1990); *Taub v. State*, 296 Md. 439, 441–42, 463 A.2d 819 (1983). It does not appear that the circuit court did so in this case. Rather, Judge H. Chester Goudy, Jr. assumed that "there might have been negligence," but reversed the judgment because he found as a matter of law the negligence was not a proximate cause of the accident, or because the claim was

barred by contributory negligence as a matter of law.[2] We may, of course, in the exercise of our independent discretion, elect to consider the question even though the first appellate tribunal did not, *Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019 (1977), and we shall do so in this case.

■ Respondents are correct in their observation that stopping a vehicle temporarily in a designated "No Parking" zone may not be a violation of the law. Section 21–1003(aa) of the Transportation Article provides that "[a] person may not park a vehicle at any other place where parking is prohibited by an official sign." Section 11–144 of that Article provides, however, that

'Park' means to halt a vehicle, whether or not it is occupied, other than temporarily:

(1) When necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or a traffic control device; or

(2) For the purpose of and while actually engaged in loading or unloading property or passengers.

Prohibition against temporary stopping for purposes of loading or unloading may be accomplished by the erection of signs prohibiting "stopping," or, as more commonly seen, a sign prohibiting "stopping, standing, or parking."

■ Had this point been raised in the District Court, the trial judge would have had an opportunity to evaluate the evidence, and the inferences fairly deducible therefrom, to determine whether the tractor trailer operator was "actually engaged in loading or unloading property." [3] If the trial

---

**2.** The basis of the decision of the circuit court is not entirely clear. In his comments from the bench, Judge Goudy said he was reversing the judgment because respondents' negligence was not a proximate cause of the accident. In his subsequent written opinion and order, however, Judge Goudy grounded the reversal solely upon the existence of contributory negligence as a matter of law.

**3.** There was testimony that Kenney did not return to the truck until after the police officer had arrived and was interviewing the drivers. Kenney's testimony suggested that he was away from the truck for at least 15 minutes.

judge had found that the truck was illegally parked, that would not have ended the inquiry. The violation of a statute may furnish evidence of negligence, *Aravanis v. Eisenberg*, 237 Md. 242, 259–60, 206 A.2d 148 (1965), but only where the person alleging negligence is within the class of persons sought to be protected, and the harm suffered is of the kind which the statute was intended, in general, to prevent. *Owens v. Simon*, 245 Md. 404, 409, 226 A.2d 548 (1967); *Slack v. Villari*, 59 Md.App. 462, 471, 476 A.2d 227 (1984); *Prosser & Keeton on The Law of Torts* § 36, at 224–27 (5th ed. 1984). A statute prohibiting parking within a specified distance from an intersection or crosswalk is obviously intended to protect motorists and pedestrians from risks associated with obstruction of visibility.[4] *Blessing v. Welding*, 226 Iowa 1178, 286 N.W. 436, 439 (1939); *Todd v. New Amsterdam Cas. Co.*, 52 So.2d 880, 882 (La.App.1951); *Packard v. Whitten*, 274 A.2d 169, 176 (Me.1971); *Meridian Hatcheries v. Troutman*, 230 Miss. 493, 93 So.2d 472, 476 (1957); *Cashen v. Dunkel*, 98 Ohio App. 319, 129 N.E.2d 303, 305–06 (1953). A statute or ordinance prohibiting parking at a specified location may or may not have a similar objective.

■ Even if we assume there was no violation of the parking statute, we conclude that the evidence was sufficient to support a finding that Kenney was negligent in parking the tractor trailer. The investigating police officer described the scene. He said the tractor trailer "covered the entire curb area from entrance to exit." He described the condition thus created as follows:

Yes your Honor, of course at the scene I knew that Mr. Hill had pulled out taking the right of way away from the car coming northbound. However, sitting in his position

---

**4.** Section 21–1003(n) of the Transportation Article, Maryland Code (1977, 1987 Repl.Vol., 1990 Cum.Supp.), prohibits the standing or parking of a vehicle within 20 feet of a crosswalk at an intersection. Under this provision, the shopping center exit onto Route 170 did not create a crosswalk on Route 170. *See Harris v. Bowie*, 249 Md. 465, 240 A.2d 242 (1968) and § 21–101(f) of the Transportation Article.

and from pulling out that exit, 'cause I say the parking lot is a one way in and out, that is all that's to that shopping center right there—just that one little front parking area. I sat in his position where he was at and I was unable to see any of northbound 170, south of that area. Between the tractor trailer sitting in the "No Parking Zone" and the cars that are routinely parked on the parking lot, there was no view at all going in a northbound direction, south of that tractor trailer, at that point of where you come out on the roadway.

Section 303 of the *Restatement (Second) of Torts* (1965) provides:

An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the other.

The trial judge here could have found that Kenney's act in parking his 45-foot tractor trailer so as to occupy the entire curb area between the entrance and exit driveways of the shopping center would substantially obstruct the view of motorists using the exit and those proceeding on Route 170, and significantly increase the risk of an accident at that point. A motorist exiting the shopping center, and particularly one intending to turn left onto Route 170, could not possibly see traffic approaching from the south until the driver, himself, cleared the front of the truck. By that time, the entire front end of the exiting vehicle, *i.e.*, all of the vehicle forward of the place occupied by the driver, would necessarily have entered the narrow portion of the northbound lane of Route 170 available for travel. In the event the front end of the exiting vehicle entered that lane while another vehicle was passing the truck in a northerly direction on Route 170, a collision would be nearly inevitable. Indeed, according to the testimony of both drivers, that is precisely what happened here.

Parking an ordinary vehicle too close to a driveway or an intersection might not create the same risk. An ordinary

motor vehicle is less than 18 feet in length and, because of front, side, and rear windows, often provides a view of traffic beyond it. Even if visibility is not possible through the vehicle's windows, a driver in the position of Hill might be able to see traffic behind the obstructing vehicle, and thus determine when it would be safe to exit.

Kenney's was no ordinary motor vehicle. It was a 45–foot tractor trailer, and common experience, as well as the testimony of Hill and Holmes, tell us that neither driver could see through it or over it. Moreover, it is clear from the testimony of the police officer that other vehicles lawfully parked on the shopping center lot prevented Hill from seeing approaching traffic by looking behind the tractor trailer, a condition that would have been apparent to Kenney when he parked his vehicle.

The Court of Appeals of Louisiana, discussing the question of primary negligence involved in parking a Greyhound bus too close to the intersection of a highway and railroad tracks, said this:

It was not strongly argued that the placing of the parked bus at the intersection of this main highway with the railroad tracks so as to completely obscure the adjacent tracks or trains from motor vehicle traffic could not constitute negligence which was a proximate cause of a resulting train-motor vehicle accident.

For such conduct, foreseeably increasing the hazard to public highway traffic and avoidable by the exercise of ordinary care, could thereby create an unreasonable risk of harm to others so as to constitute negligence, or a breach of the duty owed to others. (Footnote omitted.)

*Bergeron v. Greyhound Corporation,* 100 So.2d 923, 925 (La.App.1958).

Respondents cite *Maggitti v. Cloverland Farms Dairy,* 201 Md. 528, 95 A.2d 81 (1953), for the proposition that one cannot be guilty of negligence simply by creating an obstruction to the view of a driver by the parking of a motor

vehicle. Indeed, there is language in that case which appears to support that view.

> We think negligence could not be predicated upon lawfully parking for a necessary purpose, even though the effect is to obscure the view of other users of the highway.

*Id.* at 532, 95 A.2d 81. This language is overly broad, and was unnecessary to the holding of that case. In *Maggitti,* the allegation of negligence was that the defendant "double-parked" a delivery truck on Pratt Street in Baltimore. A child attempting to cross Pratt Street was struck "by a negligently driven automobile." The case was not decided on the basis of primary negligence, but on a determination that the declaration failed to allege facts sufficient to demonstrate that the double-parking of the dairy vehicle was a proximate cause of the accident.

Given the circumstances of the case before us, we believe the evidence was sufficient to show that the manner in which Kenney parked the tractor trailer created a foreseeable increased risk of the very type of harm which did occur, and thus the trial judge's finding of primary negligence was supported by the evidence.

## II.

### *Proximate Cause*

 Negligence, whether established through the application of common law principles, or by showing a violation of a relevant statute, is not actionable unless it is a proximate cause of the harm. *Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 712–13, 501 A.2d 35 (1985); *Liberto v. Holfeldt,* 221 Md. 62, 65, 155 A.2d 698 (1959); *Friedman v. Hendler Creamery Co.,* 158 Md. 131, 142, 148 A. 426 (1930). Negligence which constitutes a proximate cause of an injury need not necessarily be the sole cause. *Yellow Cab Co. v. Hicks,* 224 Md. 563, 567, 168 A.2d 501 (1961). In order to be a proximate cause, the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.

*Henley v. Prince George's County,* 305 Md. 320, 333–34, 503 A.2d 1333 (1986); *Peterson v. Underwood,* 258 Md. 9, 16–17, 264 A.2d 851 (1970).

An example of negligence that was not a cause of the subsequent accident is found in *Doss v. Town of Big Stone Gap,* 145 Va. 520, 134 S.E. 563 (1926). There, the plaintiff alleged the town of Big Stone Gap was negligent in maintaining its streets, thereby necessitating a detour to a roadway near an airport where the plaintiff's decedent was killed when struck by an airplane being negligently operated. The Supreme Court of Virginia said:

> In the instant case, the proximate cause of the injury was the act of Skidmore, the aviator, and no act or omission on the part of the town of Big Stone Gap. The death of the plaintiff's intestate was not 'the natural and probable consequence' of the alleged negligence or wrongful act of the town. It could not have been foreseen that an injury to any one would probably have been suffered as a result of the alleged negligent acts of the town complained of. Not merely the particular injury, but any injury.

*Id.,* 134 S.E. at 565. Similarly in *Clark v. Morrison,* 406 Pa. 130, 177 A.2d 96 (1962), a truck parked too close to an intersection was held not to be a proximate cause of an intersection accident, where the intersection was controlled by a traffic signal and one of the operators proceeded through a red light.

■ Causation in fact is apparent in the case before us. The presence of the truck created an obstruction to the vision of both drivers, and that was clearly *a* cause, although perhaps not the sole cause, of the accident. Respondents do not seriously question the existence of causation in fact. Rather, they argue that their negligence was not a proximate cause, because the subsequent negligence of Hill was a superseding cause. In *Penn. Steel Co. v. Wilkinson,* 107 Md. 574, 69 A. 412 (1908), this Court discussed the problem of intervening and superseding causes. There, it was found that the defendant bridge-builder was guilty of

negligence in allowing a rope to hang in a loop very low across a public street, and that even if the immediate cause of the plaintiff's horse being frightened was the movement of the rope by a stranger, that was but a concurring or intervening cause, and not a superseding cause which would relieve the defendant of liability. The Court, quoting from 21 *Am. & Eng. Ency.* 490, said:

> [T]he defendant is liable where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act, or omission, or even it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated, though they have been acts of plaintiff himself.

*Id.* at 581, 69 A. 412. The Court commented further that the defendant is not exempt from liability when a negligence subsequent to that of the defendant is the agent by which the defendant's negligence proves injurious, if such subsequent negligence was likely, in the usual and natural order of things, to follow from the defendant's negligence.

*Id.* Similarly, in *State v. Hecht Company*, 165 Md. 415, 421, 169 A. 311 (1933), this Court said that a defendant guilty of primary negligence remains liable "if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation."

The importance of foreseeability in the determination of proximate cause is reflected in § 435 of the *Restatement (Second) of Torts* (1965), which provides:

> Foreseeability of Harm or Manner of Its Occurrence (1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

(2) The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

In *Lashley v. Dawson*, 162 Md. 549, 160 A. 738 (1932), this Court held the evidence sufficient to support a finding that a bus driver's negligence in failing to illuminate the interior of his bus after placing it so as to constitute an obstruction of traffic at night was a proximate cause of injury to a pedestrian caused when a vehicle also being negligently operated collided with the bus and the pedestrian. This Court said:

> The mere fact that the original act of the appellants in obstructing the highway would not in itself have injured the appellee is not a defense to his action against them, if it appears that it was known, or should have been known, to appellants' driver that failure to warn approaching traffic of the obstruction might naturally and probably result in an accident which would or might injure others, lawfully in the use of the highway.

*Id.* at 561–62, 160 A. 738. In *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A.2d 592 (1941), we again recognized the importance of foreseeability in the determination of proximate cause. There, the Court held that even if the operator of the Good Humor truck was negligent in some respect by dispensing his wares from a position on a city street, the accident occurred because of "intervening, immediate causes, which he had no reason to anticipate...." *Id.* at 389, 18 A.2d 592. Similarly, in *Scott v. Watson*, 278 Md. 160, 173, 359 A.2d 548 (1976), this Court, quoting from *Little v. Woodall*, 244 Md. 620, 626, 224 A.2d 852 (1966), said "if the situation wrongfully created by the defendant increased the risk of damage through the operation of another reasonably foreseeable force, the defendant is liable for the ensuing loss."

In *Owens v. Simon, supra*, the evidence showed that Simon caused an intersection accident with Owens by fail-

ing to halt for a stop sign. A Baltimore City police officer came to the scene, and instructed Owens to move his vehicle. The officer suffered fatal injuries when he was struck by Owens, whose vehicle may have malfunctioned due to damage suffered in the accident. In an action filed by the officer's personal representative against Simon, this Court affirmed a grant of summary judgment in favor of the defendant, holding that the injury to the officer was not reasonably foreseeable as a result of Simon's negligence in failing to obey the stop sign.

In the particular context of the case before us, the test formulated in *State v. Hecht Company, supra,* 165 Md. at 422, 169 A. 311, is appropriate:

If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.

Similarly, see § 447 of the *Restatement (Second) of Torts* (1965):

Negligence of Intervening Acts

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

In *Henley v. Prince George's County, supra,* 305 Md. at 336–37, 503 A.2d 1333, we discussed the utilization of the concept of foreseeability in the separate tasks of determining the existence and scope of a tort duty, and in resolving the question of proximate cause. We pointed out that:

Foreseeability as a factor in the determination of the existence of a duty involves a prospective consideration of the facts existing at the time of the negligent conduct. Foreseeability as an element of proximate cause permits a retrospective consideration of the total facts of the occurrence, including the criminal acts of a third person occurring after the original act of negligence of a tortfeasor.

*Id.* at 336, 503 A.2d 1333. Applying these principles, we hold that the evidence in this case was sufficient to support the trial judge's finding that the risk of the very type of harm that was suffered here was reasonably foreseeable from the negligence of Kenney in parking his tractor trailer so as to significantly obstruct the vision of drivers likely to meet at that point. The negligence of Kenney continued through the moment of impact. The conduct of Hill was not "highly extraordinary"—it was predictable. The circuit court erred in finding absence of proximate cause as a matter of law.

### III.

#### *Contributory Negligence*

The circuit court found that petitioners' claim was barred by contributory negligence. In so holding, the court focused on the actions of Tracey Hill, the operator of Robert

Hill's vehicle. The circuit court judge, applying the Maryland "boulevard rule," *see GEICO v. Medical Services*, 322 Md. 645, 653–54, 589 A.2d 464 (1991), determined that the operator of the Hill vehicle was negligent as a matter of law in failing to grant the right-of-way to Holmes, who was the favored driver lawfully operating his vehicle upon the through highway. That holding suggests an interesting question: whether the boulevard rule applies with equal force when the action is between one of the operators and a third party who was not a favored driver. The Court of Special Appeals has held that a contractor whose negligence contributed to the happening of an intersection accident should not be immunized from his liability by the application of the boulevard rule. *Dail v. Tri–City Trucking Co.*, 39 Md.App. 430, 435–36, 387 A.2d 293 (1978).

And, if the boulevard rule does not have direct application, the question arises as to whether Tracey Hill was negligent as a matter of law. The fact that his view was obstructed did not excuse him; on the contrary it required increased vigilance and caution in order to measure up to the standard of reasonable care under the circumstances then prevailing. *Dunnill v. Bloomberg*, 228 Md. 230, 235, 179 A.2d 371 (1961); *People's Drug Stores v. Windham*, 178 Md. 172, 185, 12 A.2d 532 (1940); *Blinder v. Monaghan*, 171 Md. 77, 83, 188 A. 31 (1936). Respondents suggest that a prudent person in Hill's position would have made a sharp right-hand turn onto Route 170, using the tractor trailer as a partial shield from northbound traffic, and then proceeded around the block or otherwise found a suitable place to reverse direction. Alternatively, respondents suggest Hill might have had his passenger alight and direct him onto Route 170. The latter suggestion is reminiscent of the early days of railroad law, when the United States Supreme Court suggested that under some circumstances, "if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle...." *B. & O. R. R. v. Goodman*, 275 U.S. 66, 70, 48 S.Ct. 24, 25, 72 L.Ed. 167 (1927). Later, classifying the

earlier statement as dictum, Justice Cardozo writing for the Court rejected that notion.

> Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life. To get out of a vehicle and reconnoitre is an uncommon precaution, as everyday experience informs us. Besides being uncommon, it is very likely to be futile, and sometimes even dangerous. If the driver leaves his vehicle when he nears a cut or curve, he will learn nothing by getting out about the perils that lurk beyond. By the time he regains his seat and sets his car in motion, the hidden train may be upon him.

*Pokora v. Wabash Ry. Co.*, 292 U.S. 98, 104, 54 S.Ct. 580, 582–83, 78 L.Ed. 1149 (1934).

We do not reach the interesting question of Tracey Hill's possible contributory negligence, because, as respondents concede in their brief, Tracey's negligence, if any, cannot be imputed to his father under the circumstances of this case.

Ordinarily, the negligence of an operator of a motor vehicle may not be imputed to the owner who is not present in the vehicle.[5] *Williams v. Wheeler*, 252 Md. 75, 81, 249 A.2d 104 (1967); *Price v. Miller*, 165 Md. 578, 582, 169 A. 800 (1934). An exception to this rule exists when the driver is acting as the agent or servant of the owner.[6] *Williams v. Wheeler, supra*, 252 Md. at 81, 249 A.2d 104. Accordingly, the ordinary negligence of a bailee to whom the car has been loaned for the bailee's own business does not bar recovery by the bailor against a third party whose

---

5. Under some circumstances, negligence is not imputed to the owner who is present in the vehicle. *See, e.g., Nationwide Mut. Ins. Co. v. Stroh*, 314 Md. 176, 182–85, 550 A.2d 373 (1988); *Smith v. Branscome*, 251 Md. 582, 248 A.2d 455 (1968).

6. Additionally, an owner may be liable for the negligence of an operator who is not acting as the owner's agent or servant if the owner has negligently entrusted the vehicle to the operator. *Morrell v. Williams*, 279 Md. 497, 366 A.2d 1040 (1976); *Rounds v. Phillips*, 166 Md. 151, 170 A. 532 (1934).

negligence has also contributed to the injury. *Price v. Miller, supra,* 165 Md. at 581–84, 169 A. 800.

The defendant has the burden of establishing contributory negligence on the part of a plaintiff. *Moodie v. Santoni,* 292 Md. 582, 586, 441 A.2d 323 (1982). In the context of this case, therefore, respondents had the burden of proving not only that Tracey Hill was guilty of negligence which was a proximate cause of the accident, but also that his negligence was properly imputed to the owner of the vehicle, Robert Hill.

In the instant case, the trial judge heard testimony that suggested that Tracey Hill was merely a bailee of his father's vehicle, using it for his own purposes in taking a friend to the airport. More important, however, the respondents did not argue below that an agency relationship existed between the owner and operator of the Hill vehicle, and have conceded here that the question of contributory negligence "seems to be inapplicable because the use plaintiff below was the owner of the vehicle and not the operator." Accordingly, we do not pass on the question of whether Tracey Hill was guilty of contributory negligence as a matter of law.

### Conclusion

The District Court judge's finding that respondents were guilty of primary negligence which was a proximate cause of the accident was supported by the evidence. The petitioners are not properly charged with the contributory negligence, if any, of the operator of their vehicle. The judgment of the District Court should have been affirmed.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE DISTRICT COURT; COSTS IN THIS COURT AND IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY TO BE PAID BY RESPONDENTS.