61 A.3d 867

John J. ALBAN, Sr., et ux.

v.

Michael A. FIELS.

No. 1038, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Feb. 28, 2013.

**2**

Gregory J. Eichelman (William J. Blondell, Jr., on the brief) Baltimore, MD, for appellant.

Andrew T. Nichols (Rollins, Smalkin, Richards & Mackie, LLC, on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, WRIGHT and JAMES R. EYLER (Retired, Specially Assigned), JJ.

JAMES R. EYLER (Retired, Specially Assigned), J.

This case arises out of an automobile accident that occurred on June 11, 2009, in Baltimore County. There was evidence that the at-fault driver left the scene immediately after the accident, returned a few minutes later while the injured driver and passenger were still at the scene, laughing as he drove by, and then left the scene again. The issues are whether, in a personal injury claim based on negligent driving, the Circuit Court for Baltimore County erred in excluding testimony (1) by witnesses to the accident that they told the injured driver, while she was still in her truck, that appellee had fled the scene, returned and drove by the scene, laughing as he did so and (2) by the injured driver's treating psychologist that the injured driver told him about that conduct and that it formed the basis for his opinion as to a portion of the injured driver's emotional injury. We shall affirm and explain.

## Factual and Procedural Background

### Introduction

Ruth A. Alban and her husband John J. Alban, Sr., a passenger in her vehicle, appellants, were injured after their truck collided with another truck, operated by Michael A. Fiels, appellee. This lawsuit ensued, liability for negligence was uncontested, and the case was tried on the issue of compensatory damages. A jury awarded non-economic damages in the amount of $5,000 to Ms. Alban, "zero" damages to Mr. Alban, and noneconomic damages in the amount of $5,000 to both the Albans for their joint claim for loss of consortium. The trial court entered judgment for $10,000 plus costs.

Unable to convince the trial court to award them a new trial, the Albans brought this appeal. They complain that the trial court erred in precluding evidence of Mr. Fiels's conduct after the accident, arguing it was relevant to at least a portion of Ms. Alban's "psychic and emotional injuries".

The traffic accident happened when Mr. Fiels failed to stay in his lane on Hyde Park Road and collided with a pickup truck driven by Ms. Alban. Police reported that the "Front left of [Mr. Fiels's truck] struck the front left of [the Alban's truck]." According to Ms. Alban, she was unable to get out of the truck after the collision and remained there until firemen arrived, who assisted her. Mr. Alban exited the pickup truck through the right passenger door.

Mr. Fiels left the scene of the accident immediately after the collision. He drove into an area without an outlet, however. He turned around, drove by the accident scene without stopping, and continued on his way. A witness followed him, and Mr. Fiels was soon arrested at a nearby shopping mall. Witnesses at the scene would have testified, if permitted, that Mr. Fiels was laughing when he drove by the accident scene while Ms. Alban was still in her truck.

The Albans, who were in their 70s, were taken to the University of Maryland shock trauma center where they were evaluated and released. They complained of neck, back, and shoulder pain, and Ms. Alban complained of an injury to her knees. The Albans consulted an internist, Dr. Mark Abraham ("Marcelle") Reischer. They received physical therapy and pain medication. The primary claim for damages, however, made clear at the time of trial, was Ms. Alban's claim for emotional distress, manifested primarily by crying, anxiety, and sleeplessness.

### Preliminary Rulings

On October 30, 2009, the Albans filed suit in circuit court seeking compensatory damages for injuries due to Mr. Fiels's negligence and "intentional acts of outrage." The complaint contained four counts. Count one asserted a claim for damages for physical and emotional injuries to Mr. Alban, and count two asserted a claim for damages for physical and emotional injuries to Ms. Alban, both based on negligent driving. Count three asserted a claim for "Intentional Acts of Outrage." In that count, the Albans alleged that Mr. Fiels intentionally left the scene and, after reaching a dead end,

reversed direction, drove past the scene of the accident, and fled. Count four asserted a joint claim for loss of consortium. In each of counts one, two, and four, the Albans sought $500,000 in damages. In count three, they sought $1,000,000.00 in damages for "intentional misconduct."

On March 16, 2011, Mr. Fiels filed a motion to dismiss or for partial summary judgment, asserting that "Count III of Plaintiffs' Complaint fails to state a recognized cause of action for Intentional Acts of Outrage against [him]."

At the beginning of trial, on May 2, 2011, the court addressed Mr. Fiels's motion. Counsel for the Albans argued that count three was intended to assert the tort of intentional infliction of emotional distress, as it is known in Maryland law. This cause of action, he asserted, was based on Mr. Fiels's outrageous conduct. The trial court ruled that the count did not allege all of the elements of that cause of action and granted the motion. The Albans do not challenge that ruling on appeal.

After that ruling, Mr. Fiels's counsel moved to "exclude any testimony regarding [his] failure or alleged failure to immediately stop at the accident scene." Mr. Fiels admitted liability as to negligence and argued that such testimony was no longer relevant because of his admission of liability and dismissal of count three. His counsel argued in the alternative that, assuming such evidence were relevant, its probative value would be outweighed by its prejudicial impact.

Following extensive argument, the trial court excluded evidence relating to Mr. Fiels's post-accident actions, explaining her decision, in pertinent part, as follows:

THE COURT: All right. I mean the difficulty though is under the case law, a lot of what you're talking about are simply not appropriate elements of damage or relevant for consideration by the jury. The damage,—

\* \* \*

I've heard the argument and, with all due respect, at some point I rule on it and you and I are going to disagree

on it. I understand from a human standpoint what you're talking about and, you know, I'm certain if I thought somebody caused me injury, smirked, drove off or could have cared less, I'd be outraged. But the question isn't outrage, it's a question of what were the physical injuries that were caused, the extent and duration, the psychological injury that she sustained and to that extent, you've got to let me finish.

*        *        *

THE COURT: To the extent that your doctor got in testimony[1] that part of her PTSD is going to be related to being trapped in the car and worrying whether she would live or die, that's clearly relevant and clearly admissible. To the extent she also stated that part of the thing that contributed to that was that he didn't even bother to see if she was okay, that's coming in and I think that that's marginally admissible but it's in the middle of an answer and counsel's not jumping up and down and screaming I should try and parse that out somehow. But his behavior afterwards, the fact that he's at a Food Lion shopping and the fact that other people will say he smirked in some way, those things don't relate to her damages and her injury. All they do is invite outrage and, you know, punitive response from a jury as opposed to an appropriate dispassionate consideration of what's the nature and extent of her injury. So for those reasons, I, I am granting the Motion in Limine as to the after behavior of the defendant. I don't think it's relevant or admissible.

## The Albans' Proffer

Following the trial court's ruling, the Albans' counsel proffered the testimony that his clients would elicit if permitted to do so. Because it is the exclusion of this evidence that forms the basis of the Albans' arguments on appeal, we set forth their proffer in its entirety:

---

1. The court's reference is to the video deposition of Dr. Gewanter.

[THE ALBANS' COUNSEL]: If Your Honor please, I'd like to proffer evidence that has been excluded and we'd start back actually with the deposition of [Mr. Fiels] who stated, the question was asked of him, and I would have called him, we're, we're now back in June 11th of '09, "When you struck the vehicle occupied by the Albans, did it occur to you that someone might be injured in that vehicle?

"Answer: No.

"Did you have any concerns over whether anyone was injured in that vehicle?

"Answer: At the time, I was worried about myself."

Again on his deposition, I had asked him,

"So I understand that you were having a panic attack because you hit somebody, but you weren't concerned over whether anyone was injured?

"Answer: I can't tell you what my thoughts were at the time but I was concerned about myself, yes.

"Question: But nobody else. Is that correct?

"No, not at that time."

The witnesses, if they had been allowed to testify, Mrs. Stella Cox would testify that she heard the collision, she didn't see the collision, she heard the horn, she heard the collision, she immediately ran out and she saw the truck, a large white unmarked truck driving southbound on Hyde Park Road. Knowing that there was no way out in that direction, she called to her nephew, who was working in the yard, to follow that truck. The nephew, Antoine Stamper, who would testify, had, had he, that he followed the truck and then followed the truck back past the scene again, the truck slowed and then sped up to go and drove approximately a mile away into a Food Lion shopping center, parking his vehicle and then getting out to go. Ms. Cox back [sic] would continue with her testimony that while she was standing behind the pickup truck, she observed the defendant's truck proceeding towards her, slowing down, he looked over at her and laughed and sped up and sped away.

Mr. Raymond Doetsch, D-o-e-t-s-c-h, would testify that likewise he had, he had heard the collision, he ran out to see what was going on, and he saw the truck going past him into Hyde Park. He waited, he knew that again that vehicle would have to come back. Minutes later, he sees the truck coming back with damage to its left side or the driver's side of that vehicle with the mirror ripped off and what have you, and the same situation, the driver looked at him, laughed and then sped up and, and left the scene. The, and that would basically be it.

It is not apparent from this proffer whether these witnesses told Ms. Alban while she was still in her truck that Mr. Fiels had laughed as he fled the scene. During the course of the argument, however, the Albans' counsel asserted that the witnesses would so testify, and we treat that assertion as part of the proffer.

### The Albans' Relevant Testimony at Trial

The Albans both testified. Ms. Alban recounted that, after the collision, her husband managed to exit the truck. She could not get out, but asked her husband to "see where the [driver of the other vehicle] is[.]" The driver—Mr. Fiels— was not at the scene.

Ms. Alban chronicled the treatment for her physical injuries. With respect to her emotional well-being, she recounted:

[THE ALBANS' COUNSEL]: Okay. Now during that time, did you have any other complaints other than those physical ailments that you talked about?

A.   My nerves.

*       *       *

I couldn't sleep. I kept thinking of this is it, you know. He's going to kill both of us at one time. And I still think about it.

Q.   What do you think about it?

A.   I just get scared and, and I take anxiety medicine because I just cry, sit and cry. I don't know why. I guess 'cause I'm reliving it. I don't know. When I wake up in the

morning I get tears in my eyes and I don't know why. I guess I dreamt.

Q. Okay. Now what was it that concerns you about the thing that caused you, if you know, to cry or be that nervous?

\* \* \*

A. I just keep thinking and reliving and, and I, I guess the main thing is I keep thinking he didn't care. You know, if somebody cares, they would have tried to help me or not run away, you know. I thought he didn't care and I care for people and I worry about people. Well just in my mind to think somebody don't care, like I'm just trash sitting there or something. He came by again and, and still seen me in the truck and still didn't stop.

Q. Okay. When does it, when do you have these thoughts or they're day and night or when?

A. I have a lot of anxiety attacks.

Ms. Alban was referred to Dr. Harvey Gewanter, an experienced clinical psychologist. Ms. Alban testified that she went to see Dr. Gewanter for a consultation but did not return because she did not want to take the time to see him, even though she felt that she still needed his assistance. She finally returned to see him, 16 months later, at her husband's urging. During his testimony, Mr. Alban underscored the emotional trauma his wife had suffered—she would often be crying—and said that this had been "going on for the last two years[.]"

### Expert Testimony

On April 21, 2011, the Albans took the video deposition of Dr. Gewanter. This deposition was played for the jury.

Dr. Gewanter first saw Ms. Alban on August 20, 2009, when she presented with complaints related to the automobile accident. Ms. Alban told him the experience was "frightening," and described the accident as "a hit-and-run situation, where, apparently, a man had struck her car and rather—and then he fled the scene[.]" Dr. Gewanter testified that Ms. Alban was

"really having a lot of difficulty sleeping." He also related that she talked about reduced motivation, depression, sadness, and being "very upset about the situation."

Dr. Gewanter diagnosed Ms. Alban with Post Traumatic Stress Disorder, but added that it was resolving somewhat. He explained that Ms. Alban "was exposed to a very traumatic event." He opined that Ms. Alban's condition was caused by the fact that she was "locked in her car by the force of the impact, and she felt trapped in there, as she described it to me. She was frightened. She was trapped, and she felt her life was in danger."

With respect to Mr. Fiels's post-accident conduct, Dr. Gewanter continued:

> And I think also, she shared with me that the gentleman who hit her car left and did not stay and attend to—to see if she was okay. And that was a very, very upsetting piece of the whole story, as well. As she felt—she could not understand why the man would not stop and see about her wellbeing. And this was a big piece of her being upset and agitated and feeling like ... this was a very irresponsible thing for a person to do when you were in an accident.

At the time of the initial consultation, Dr. Gewanter thought that Ms. Alban would probably benefit from additional counseling, but recalled that she did not pursue it. He opined that Ms. Alban "has always had this anxiety since the time of her accident." He initially thought that it was resolving but then testified: "I think that anxiety was probably always there and I think this recent [unrelated] injury [to her arm] just made her worse, exacerbated the whole condition that was already there."

On cross-examination, when asked to comment on his report that Ms. Alban's symptoms were improving or resolving nine weeks after the accident, Dr. Gewanter agreed that she was "getting a little better." Notwithstanding, he initially thought Ms. Alban was suffering from Post Traumatic Stress Disorder. He explained that she would recall dreams and waking

thoughts about being trapped in the car and "this man fleeing the scene."

On further cross-examination, when asked whether Ms. Alban exhibited all of the elements of PTSD, Dr. Gewanter acknowledged that Ms. Alban "did not have all the components of a Post Traumatic Stress Disorder by definition, by textbook definition, but she had features clinically that would suggest she had a Post Traumatic Stress Disorder." When asked to explain how a chronic condition such as PTSD would show improvement "at the . . . nine or ten week mark," and whether this was unusual for a diagnosis of PTSD, Dr. Gewanter amended his earlier diagnosis and opined that Ms. Alban "probably has generalized anxiety disorder." Commenting on Ms. Alban's statement that she did not return for treatment with him because she "never felt the need to return for any further sessions," Dr. Gewanter suggested that she felt she could manage with medication. He acknowledged that her original generalized anxiety may have resolved in the 16 months between her first and second visits with him.

On redirect examination, Dr. Gewanter opined that it was "very likely" that Ms. Alban's "generalized anxiety disorder manifested itself as a result of the traumatic incident of the collision of the two vehicles." He also explained that "[g]eneralized anxiety disorder is anxiety about more than one situation."

The Albans presented the testimony of Dr. Reischer, who was accepted as an expert in a number of specialties, including internal medicine, physical medicine and rehabilitation, and pain medicine. He is not a psychiatrist, and did not complete a residency in psychiatry.

Dr. Reischer saw both Mr. and Ms. Alban on June 24, 2009. With respect to Ms. Alban, based on the patient's history, Dr. Reischer testified that "[s]he has had significant post traumatic anxiety, has been started on Lorazepam with some benefit but still breaks into tears periodically." When asked to explain, Dr. Reischer said that "since this accident, she had developed significant psychological abnormalities, psychologi-

cal problems." He prescribed medication for Ms. Alban's post traumatic anxiety.

Dr. Reischer saw Ms. Alban again on July 15, 2009. He testified that "the post traumatic anxiety was improving as well, although she still had episodes when it was bothering her significantly." After he saw Ms. Alban one month later on August 19, he referred her for a psychological evaluation because she complained of "increasing difficulty with flashbacks related to the post traumatic anxiety[.]" Ms. Alban then saw Dr. Gewanter, as discussed above. When he saw Ms. Alban on August 31, 2009, Dr. Reischer observed that she had seen Dr. Gewanter and "was doing significantly better and was improving at this point."

Dr. Reischer last saw Ms. Alban on April 11, 2011, and recalled that, at that time, her predominant symptoms were related to her post traumatic stress and anxiety. He opined that she was permanently disabled, with the post traumatic anxiety a predominant aspect.

We will recite additional facts as appropriate.

## DISCUSSION

### *Contentions on Appeal*

The Albans contend the trial court erred in excluding evidence of Mr. Fiels's post-accident conduct because it was relevant to the jury's understanding of the cause and extent of Ms. Alban's emotional and psychological injuries, and its probative value was not outweighed by the danger of undue prejudice. They maintain that the court's ruling was prejudicial because the jury did not receive evidence that was part of the factual basis for the opinions of their experts, Drs. Gewanter and Reischer, especially the foundations of the former's "opinion on Ms. Alban's psychic and emotional injuries." As a result, the jury was without the testimony that would provide an accurate context for Ms. Alban's continuing psychological and emotional injuries, part of the Albans' damages claim

under Ms. Alban's negligent driving count and their joint loss of consortium count.[2]

Mr. Fiels contends the evidence in question was irrelevant, and in any event, the court did not abuse its discretion because any probative value the evidence may have had was outweighed by the danger of undue prejudice.

## Standard of Review

The decision whether to admit evidence ordinarily is entrusted to the discretion of the trial court. *See J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 91–92, 792 A.2d 288 (2002); *Butler v. S & S Partnership*, 207 Md.App. 60, 110, 51 A.3d 708 (2012) (citations omitted). By the same token, regardless of a trial court's prerogative in this regard, certain evidentiary rulings by the trial court are subject to plenary review. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. A trial court "does not have discretion to admit irrelevant evidence." *Ruffin Hotel Corporation of Maryland, Inc. v. Gasper*, 418 Md. 594, 620, 17 A.3d 676 (2011); Md. Rule 5–402. Maryland cases have thus recognized:

> While the "clearly erroneous" standard of review is applicable to the trial judge's factual finding that an item of evidence does or does not have "probative value," the "de novo" standard of review is applicable to the trial judge's conclusion of law that the evidence at issue is or is not "of consequence to the determination of the action."

*Gasper*, 418 Md. at 620, 17 A.3d 676 (citations omitted).

The determination that evidence is relevant does not end the inquiry. A trial court's ruling, as to whether the admission of even relevant evidence would be unduly prejudicial, is reviewed for an abuse of discretion. *See Schneider v. Little*,

---

2. As mentioned above, the Albans do not challenge the circuit court's ruling on count three, the claim for "Intentional Acts of Outrage," known in Maryland as intentional infliction of emotional distress.

206 Md.App. 414, 434, 49 A.3d 333, *cert. granted on other grounds*, 429 Md. 303, 55 A.3d 906 (2012). *See also, Crane v. Dunn*, 382 Md. 83, 100, 854 A.2d 1180 (2004).

## *Analysis*

The trial court ruled that the disputed evidence relating to Mr. Fiels's post-accident conduct was not "of consequence to the determination of the action." The parties, apparently unclear as to whether the court simply ruled that the evidence was irrelevant or whether it also ruled that it was inadmissible, in the exercise of its discretion, under Rules 5–403 (weighing probative value against danger of undue prejudice) and 5–703(b) (facts and data reasonably relied upon by an expert may be admissible for limited purpose), briefed both possibilities on appeal. We conclude that the evidence was irrelevant, and assuming *arguendo* that the disputed evidence was relevant, the trial court acted within its discretion in excluding it on the basis that it would be unduly prejudicial.

■ "In order to state a cause of action in negligence, the plaintiff must show the following: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rosenblatt v. Exxon*, 335 Md. 58, 76, 642 A.2d 180 (1994) (citations omitted). To find proximate cause in a negligence case, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." *Atlantic Mutual Insurance Co. v. Kenney*, 323 Md. 116, 127–28, 591 A.2d 507 (1991) (citations omitted).

■ In the case before us, the Albans were permitted to introduce lay and expert testimony relating to Ms. Alban's claim for emotional injury to the extent that such injury was caused by the accident itself and to the extent it was related to the physical injuries sustained in the accident. There is no basis on which to justify the admission of further evidence of Mr. Fiels's post-accident conduct, whether it is labeled as inappropriate or reprehensible, in a negligence action brought

to recover damages for physical injuries and other legally cognizable elements of damage caused by the accident.

In Maryland, recovery may be had for emotional distress arising out of tortious conduct, as an element of damage, not as an independent tort. *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 62–63, 502 A.2d 1057, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986). In other words, Maryland does not recognize the tort of negligent infliction of emotional distress.

Traditionally, recovery for emotional distress as an element of damage in a negligence action required proof of a physical injury or, in some instances, a physical impact. *Vance v. Vance*, 286 Md. 490, 496–497, 408 A.2d 728 (1979). In *Bowman v. Williams*, 164 Md. 397, 165 A. 182 (1933), the plaintiff claimed damages for emotional distress allegedly caused when the defendant's negligently operated truck crashed into the plaintiff's house. Prior to the impact, the plaintiff observed the truck and feared for the safety of his sons, who were in the basement, at street level. When the truck crashed into the house, the plaintiff, who was on a floor above street level, went into shock, was bed-ridden for several weeks, and was unable to work for six months.

In the plaintiff's negligence action against the driver, the Court of Appeals held that "a plaintiff can sustain an action for damages for nervous shock or injury caused, without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury, as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Id.* at 404, 165 A. 182.

In *Vance, supra,* relied on by the Albans, the plaintiff sought and obtained a decree awarding her alimony and child support after her husband of eighteen years left her and their two children for another woman. 286 Md. at 492, 408 A.2d 728. The defendant filed a motion to strike the decree and annul the marriage on the ground that it was void because the defendant was not divorced from his first wife when he

purported to marry the plaintiff. Although the defendant had believed his divorce was final at the time he married the plaintiff, he learned nearly a month after that purported marriage that his divorce decree had become final several weeks after the purported marriage. *Id.* The defendant did not disclose this fact to the plaintiff prior to filing his motion to strike. Thereafter, the plaintiff sued the defendant for, *inter alia,* damages for emotional distress that she claimed to have suffered as a result of the defendant's negligent misrepresentation over their eighteen years of assumed marriage, concerning his marital status at the time of their purported marriage. *Id.* at 492–493, 408 A.2d 728.

Interpreting *Bowman,* the *Vance* Court noted several means by which the requisite "physical injury" resulting from emotional distress may be proved. The first few categories, according to the Court, "pertain to manifestations of a physical injury through evidence of an external condition or by symptoms of a pathological or physiological state." *Id.* at 500, 408 A.2d 728. The Court stated that a physical injury can be proven "by evidence indicative of a mental state.... In the context of the *Bowman* rule, therefore, the term 'physical' is not used in its ordinary dictionary sense ...,[but is instead used] to represent that the injury for which recovery is sought is capable of objective determination." *Id.*

The *Vance* Court, citing evidence that the plaintiff (1)went into a state of shock, (2) engaged in spontaneous crying, (3) was unable to function normally, (4) experienced symptoms of an ulcer, and (5) suffered an emotional collapse and depression, concluded that the evidence supported a jury finding that the plaintiff had satisfied the "physical injury" requirement in *Bowman.* *Id.* at 501, 408 A.2d 728.

In *Belcher v. T. Rowe Price Foundation, Inc.,* 329 Md. 709, 621 A.2d 872 (1993), a secretarial employee of the defendant sought compensation under the Workers' Compensation Act (the "Act") for, *inter alia,* emotional distress she suffered following a construction accident in her workplace. She was at work when a three-ton beam came loose from a crane and

crashed through the roof, landing five feet from her location. *Id.* at 713, 621 A.2d 872. The primary issue before the *Belcher* Court was whether "injury," as used in the Act, encompassed psychological, emotional, or mental injuries, as distinguished from purely physiological injuries. *Id.* at 719, 621 A.2d 872. The Court concluded that the *Vance* holding that damages may be recovered for emotional distress capable of objective determination was the correct legal standard. *Id.* at 733–734, 621 A.2d 872.

In *Beynon v. Montgomery Cablevision Ltd. Pshp.*, 351 Md. 460, 718 A.2d 1161 (1998), the plaintiff's decedent, operating a vehicle, collided with the rear of a tractor trailer and was killed on impact. According to the evidence at trial, the plaintiff's decedent was aware of the impending danger approximately 192 feet from the rear of the tractor trailer, as evidenced by the fact that he veered to one side and left 71 and one-half feet of skid marks. *Id.* at 465, 718 A.2d 1161. The Court acknowledged that it was "well-settled that, in the absence of a physical impact or injury directly resulting in harm, mental and emotional injuries such as fright are not compensable unless there are objective manifestations of such injury." *Id.* at 463, 718 A.2d 1161. The Court held that "in survival actions, where a decedent experiences great fear and apprehension of imminent death before the fatal physical impact, the decedent's estate may recover for such emotional distress and mental anguish as are capable of objective determination." *Id.* at 464, 718 A.2d 1161.

In *Hendrix v. Burns*, 205 Md.App. 1, 43 A.3d 415, *cert. denied*, 427 Md. 608, 50 A.3d 607 (2012), which the Albans attempt to distinguish, the plaintiff was injured in a motor vehicle accident and filed suit. The defendant admitted liability. The plaintiff was permitted to recover for the fright she experienced during the accident and the emotional distress she endured as a result of the physical injuries she sustained in the accident. *Id.* at 31, 43 A.3d 415. The trial court granted the defendant's motion in limine that precluded the plaintiff from introducing evidence that, after the accident and after she had left the accident scene, she learned that at the

time leading up to the accident the defendant had been drunk, had been involved in a "road rage" incident with another driver, had attempted to flee after the accident, and had a criminal record that included driving under the influence convictions. *Id.* at 10, 43 A.3d 415. The plaintiff maintained that because she had worked as a 9-1-1 operator for years, and had taken calls related to drunk driving accidents, the fact that she was hit by a drunk driver was relevant to her emotional distress. After reviewing several cases, including *Belcher, Beynon* and *Vance,* we concluded that the fact, learned by the plaintiff after the accident, that the defendant was drunk, was in a road rage incident, attempted to flee, and had a history of drunk driving convictions was not relevant to the emotional distress she experienced as a consequence of the collision. *Id.* at 37, 43 A.3d 415. Moreover, because the trial court had concluded, in the alternative, that any probative value of the evidence was outweighed by the danger of undue prejudice, we held that the conclusion was reasonable. *Id.*

■ The Albans seek to distinguish *Hendrix* because Ms. Alban was told about Mr. Fiels's conduct while she was still trapped in her vehicle. That is a factual distinction without a legal difference. Our review of the relevant negligence cases reveals that emotional distress that is not dependent upon a physical injury or impact or a legally cognizable fear of harm and that is based upon conduct other than that which caused the injury, impact, or fear is not compensable unless, standing alone, the conduct constituted a tort, *e.g.,* a separate act of negligence. Ms. Alban sustained a physical injury and recovered damages for that and the attendant emotional distress. To the extent she suffered any additional emotional distress, it was not caused by the physical injury, the impact or any legally cognizable fear of harm.

### *Bases for Expert Opinions*

The Albans maintain that the trial court's ruling prevented them from demonstrating the bases for the expert opinions of Drs. Reischer and Gewanter. They point out that experts may refer even to inadmissible evidence, and contend that the

trial court's rulings eviscerated the probative value of each expert's assessment of the true nature and extent of Ms. Alban's emotional and psychological injury. Had the jurors heard from witnesses who could relate Mr. Fiels's post-accident conduct in detail, the Albans assert, their experts' testimony would have been more forceful.

Rules 5–702 and 5–703 address the admission of expert testimony, and provide:

**Rule 5–702. Testimony by experts.**

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

Maryland Rule 5–703 provides, in pertinent part:

**Rule 5–703. Bases of opinion testimony by experts.**

(a) **In general.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

(b) **Disclosure to jury.** If determined to be trustworthy, necessary to illuminate testimony, and unprivileged, facts or data reasonably relied upon by an expert pursuant to section (a) may, in the discretion of the court, be disclosed to the jury even if those facts and data are not admissible in evidence. Upon request, the court shall instruct the jury to use those facts and data only for the purpose of evaluating the validity and probative value of the expert's opinion or inference.

■  Most certainly, "[a]n expert may give an opinion based on facts contained in reports, studies, or statements from third parties, if the underlying material is shown to be of the type reasonably relied upon by experts in the field." *United States Gypsum Co. v. Mayor and City Council of Baltimore*, 336 Md. 145, 176, 647 A.2d 405 (1994). The focus of the language in Rule 5–703(a) that facts or data forming the basis for an expert's opinion may be relied on if "of a type reasonably relied upon by experts in the particular field" ordinarily relates to hearsay evidence. *Attorney Grievance Comm'n v. Nothstein*, 300 Md. 667, 682, 480 A.2d 807 (1984). If such information received from others is inadmissible hearsay, "it ordinarily comes in not as substantive evidence but only to explain the factual basis for the testifying expert's opinion." *United States Gypsum Co.*, 336 Md. at 176 n. 10, 647 A.2d 405. Regardless of why the facts or data within the meaning of Rule 5–703(a) are not admissible as substantive evidence, when they are permitted for Rule 5–703(a) purposes, they are not admitted as substantive evidence.  Thus, "[u]pon request, the court shall instruct the jury to use those facts and data only for the purpose of evaluating the validity and probative value of the expert's opinion or inference."  Rule 5–703(b).

In other words, Rule 5–703(a) does not operate to admit as substantive evidence facts or data that are otherwise inadmissible.  The facts or data relied upon are admissible, if at all, only to explain how the expert reached an opinion.  Thus, unless inadmissible as a matter of law, inadmissible evidence, if it satisfies Rule 5–703, may be admitted, in the court's discretion, to explain the factual basis for an expert's opinion. For purposes of legal sufficiency, however, it cannot serve as a substitute for admissible evidence of the underlying operative facts necessary to support a claim or defense.  If those facts are not proved by admissible evidence, the expert's testimony will not be sufficient to satisfy the elements of a claim or defense, and the claim or defense will not survive a motion challenging legal sufficiency.

**22**

■ The question before us is whether the evidence in question was admissible as non-substantive evidence as part of the foundation of an expert's opinion, with a curative instruction if requested, when, as we have already discussed, it was not admissible as substantive evidence. We conclude that it was not because (1) Mr. Fiels's post-accident conduct was irrelevant and (2) any expert opinion that was based on a causal connection between that conduct and a portion of Ms. Alban's emotional distress was implicitly an opinion of law.

■ "Expert testimony is admissible only if it is relevant," and "such evidence is relevant if the jury will find the testimony helpful in resolving the issues in the case." *Wilder v. State,* 191 Md.App. 319, 361, 991 A.2d 172 (citation and internal quotation marks omitted), *cert. denied,* 415 Md. 43, 997 A.2d 792 (2010). In addition, outside of the realm of legal malpractice, expert witnesses ordinarily may not give opinions on questions of law. *Franch v. Ankney,* 341 Md. 350, 361, 670 A.2d 951 (1996); *Bd. of County Comm'rs v. Dorman,* 187 Md.App. 443, 454, 979 A.2d 167, *cert. denied,* 411 Md. 600, 984 A.2d 244 (2009); *Burdette v. Rockville Crane Rental, Inc.,* 130 Md.App. 193, 210, 745 A.2d 457 (2000).

■ Rule 5–703(a) does not dispense with the need for relevancy of an expert's testimony, and in addition, it does not permit an expert to implicitly or explicitly opine on legal issues. An expert's opinion which is founded on a premise which is "unsound or faulty" is inadmissible. *Franch,* 341 Md. at 364, 670 A.2d 951. If the foundation for an expert's opinion is premised on an incorrect view of its legal relevance, it is inadmissible. *Id.*

Consequently, the proffered testimony regarding Mr. Fiels's post-accident conduct, being irrelevant, could not serve as a basis for the Albans' expert witnesses' opinions. In addition, as we have discussed, Ms. Alban's claim for emotional distress, to the extent it was caused by Mr. Fiels's post-accident conduct, was not legally cognizable. A conclusion of non-relevance, a conclusion of undue prejudice, a conclusion of no proximate causation as a matter of law, or a conclusion of non

recovery as a matter of law for any other reason are all legal questions. Because the evidence was not relevant, it could not serve as a foundation for the opinions of the Albans' experts and, more important, the experts could not make compensable any emotional distress suffered by Ms. Alban because of Mr. Fiels's post-accident conduct.

### Probative Value Versus Undue Prejudice

■ Even if there were some probative value in the disputed evidence, we agree with Mr. Fiels that the trial court could have reasonably concluded that the introduction of the disputed testimony would have been unduly prejudicial. We note that the trial judge permitted testimony that was relevant to Ms. Alban's emotional and psychological distress. Ms. Alban was permitted to describe her fright upon seeing appellee's truck approaching her vehicle. She also testified to being trapped in her truck and suffering physical and emotional injuries. The jury also heard of Ms. Alban's distress over appellee's flight from the scene, through her testimony and also that of Dr. Gewanter. In short, the Albans succeeded in getting in front of the jury the substance of their proffer with the exception of Mr. Fiels's smirky demeanor.[3]

Rule 5–403 provides that even probative evidence may be precluded if its prejudicial impact outweighs any probative value. The Rule states:

Maryland Rule 5–403 provides:

**Rule 5–403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

---

**3.** We note that the trial court ruled that Mr. Fiels's post-accident conduct was inadmissible, except for evidence that Mr. Fiels did not identify himself to the Albans. Evidence of other post-accident conduct, which was properly excluded, was admitted, however, because there was no objection.

jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Rule "codifies the inherent powers of trial judges to exercise discretion to exclude relevant, probative evidence that is unduly prejudicial, confusing, or time-consuming." *Crane v. Dunn,* 382 Md. 83, 100, 854 A.2d 1180 (2004). When weighing evidence, "a trial court is given significant deference in its determination that probative evidentiary value outweighs any danger of prejudice." *S. Mgmt. Corp. v. Mariner,* 144 Md. App. 188, 197, 797 A.2d 110 (2002). Prejudice, in the context of the balancing test, has been described as follows:

> "Evidence is never excluded merely because it is 'prejudicial.' If prejudice were the test, no evidence would ever be admitted. Parties ... have a right to introduce prejudicial evidence. Probative value is outweighed by the danger of 'unfair' prejudice when the evidence produces such an emotional response that logic cannot overcome prejudice or sympathy needlessly injected into the case."
>
> *Moore v. State,* 84 Md.App. 165, 172, 578 A.2d 304, *cert. denied,* 321 Md. 385, 582 A.2d 1256 (1990) (quoting J. Murphy, MARYLAND EVIDENCE HANDBOOK, § 509, p. 160 (1989)).

*CSX Transp., Inc. v. Pitts,* 203 Md.App. 343, 373 (2012). It is well-established that

> [A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what the court deems minimally acceptable.

*Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 425, 914 A.2d 113 (2007) (quoting *North v. North,* 102 Md.App. 1, 14, 648 A.2d 1025 (1994)). Indeed, as Professor Lynn McLain has pointed out in the context of disclosing the foundation for an expert's opinion, even if the requirements for the admission of such evidence for a limited purpose are satisfied, "the court may exclude the evidence under Rule 5–403, if it determines

that, for example, it would be unduly confusing to the jury or unduly, unfairly prejudicial." 6 L. McLain, MARYLAND EVIDENCE, § 703:1 at 796 (2001 & 2011–2012 Supp.).

We perceive no reversible error.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.**